UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**WILLIAM JOSEPH MADDEN**                                                   **PLAINTIFF**

**v.**                                     **CIVIL ACTION NO. 3:15-CV-P616-GNS**

**JAILER LARRY PIPER et al.**                                         **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William Joseph Madden, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

**I. SUMMARY OF CLAIMS**

Plaintiff's complaint concerns his incarceration as a pretrial detainee at the Allen County Detention Center (ACDC). He names as Defendants in their individual and official capacities the following Allen County employees: Jailer Larry Piper; Deputy Jailers Nick Pierce, Kenneth Pardue, and John Hollars; and Deputy Sheriff William Francis. He also names as a defendant Scottsville Police Department Officer Darren Tabor.

Plaintiff states that at the time he became incarcerated in the ACDC he was suffering from scabies. It appears that, because the medical holding cell's shower was not working, Plaintiff was "housed, unknowingly, in a cell used as protective custody. The cell was used to house sex offenders exclusively at that time. This cause[d] plaintiff numerous hardships . . . ." Plaintiff alleges that from March 15 to July 21, 2014, he "was not allowed access to fresh air and sunlight," even though the general population was allowed outside regularly. He alleges that

because he was not "afforded the same treatment as the other inmates of the jail concerning access to fresh air, sunlight, recreation and exercise" his equal-protection and his Fourteenth Amendment rights were violated. He also alleges that during that time he was confined to a twelve by twenty foot area designed to hold two inmates, but which was "grossly overcrowded with as many as six inmates."

Plaintiff further alleges that his First Amendment, Fourteenth Amendment, and equal-protection rights were violated because he was not allowed to attend religious services and Alcoholics Anonymous/Narcotics Anonymous meetings.

Plaintiff next alleges that his equal-protection right was denied because he was not allowed access to a television and hot pot, as provided to all other inmates, and there was no rational basis for the deprivation. He further alleges that his equal-protection right was violated when new mattresses were distributed to inmates in the general population but that Defendant Piper ordered that the new mattresses were not allowed in cell 165 where Plaintiff was housed.

Plaintiff also alleges that "the cumulative negative treatment dealt to him at the hand of defendant Piper while housed at Allen County Detention Center were acts of retaliation." Plaintiff states that "Defendant did not want to appear kind to child molesters and rapists." Plaintiff alleges that when he requested a haircut two days before his criminal trial Defendant Piper told him that "he did not have to provide me with a haircut . . . because I had an opportunity to get a haircut several days prior to that. Plaintiff's hair had not been cut in nine months. Plaintiff believes that his unkept appearance at trial had a negative impact." He also asserts that Defendant Piper "engaged in the retaliatory conduct because plaintiff chose to proceed with a trial by jury instead of accepting a plea offer made earlier that day."

Plaintiff next states that on November 6, 2014, he was accused of damaging a window in a cell door. He states that Defendant Pierce "called law enforcement to the jail for assistance. [Defendants Tabor and Francis] responded and the three defendants came to my cell to remove me from the cell and escort me to the booking area up front. I did not resist the officers and allowed them to place me in handcuffs. The cuffs applied by [Defendant Tabor] were not double locked to insure they did not tighten to an unsafe extent. Plaintiff was escorted to the booking area and placed in a restraint chair with hands cuffed behind [his] back and rolled into drunk tank." He states that after twenty minutes he yelled to Defendants Pierce and Pardue that the handcuffs had tightened and cut into his wrists. He states that he heard Defendant Pardue tell Defendant Pierce that he was complaining about the cuffs, but that Pierce responded that he "would be ok." He states that the handcuffs cut into his wrists from approximately 9:30 pm on November 6 until approximately 12:30 am on November 7 when Defendant Hollars finally loosened the cuffs.

Plaintiff states that he was not released from the restraint chair for seven hours or until 4:30 am (with only a "less than one minute" break to use the bathroom) and that he was scheduled for trial at 8:30 am. He alleges that Defendant Hollars should have released him at some point earlier in his shift, making Defendant Hollars equally liable. He states that he suffered nerve damage to his hands, causing numbness and a pricking, needle-point pain in his hands for three months. He alleges that Defendants Pierce, Tabor, and Francis acted in concert to inflict cruel and unusual punishment and that the misuse of the handcuffs should be considered negligence and a lack of training. He alleges that as a pretrial detainee he was clearly being punished that night. He further alleges that, as the Jailer, Defendant Piper would have been notified of the situation and that, therefore, Defendants Piper, Pierce, and Hollars agreed to

keep him in the chair even after it was unnecessary, which was another opportunity to disrupt Plaintiff's ability to perform at trial. He states that Defendant Piper took Plaintiff straight to court from the drunk tank without giving him the opportunity to comb his hair or brush his teeth. He further alleges that these actions indicate a civil conspiracy to disrupt Plaintiff's ability to have a fair trial.

Plaintiff further alleges that on July 20, 2014, he requested a grievance form from Defendant Pierce, but that a few minutes later Defendant Piper came to his cell and "made threats" and told him there were no grievance forms but that if Plaintiff had a problem he should take it up with Defendant Piper personally. Plaintiff states that he wrote Defendant Piper a letter of complaint about not being given time in the "bullpen" like other inmates. Plaintiff states that Defendant Piper did not respond, but soon after he was given semi-regular access to the bullpen. He states that, thereafter, he wrote multiple letters of complaint about lack of privileges but that Defendant Piper failed to respond to or resolve any of those complaints. Plaintiff alleges that he and the other inmates of cell 165 experienced retaliation by a reduction in access to the inmate library, "the only means of entertainment afforded to the plaintiff."

Plaintiff states that he wrote letters of complaint to the Department of Corrections (DOC) and the DOC Commissioner. Plaintiff claims that Defendant Piper and his deputies "intercepted these letters, read them, and retaliated against the plaintiff for trying to disclose the wrong doings plaintiff has asserts" in this complaint. As relief, he asks for monetary and punitive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be

4

granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *Claim regarding grievance*

Plaintiff alleges that he was told that there were no grievance forms by Defendant Piper, but that he should take up any problems with Defendant Piper personally. He states that he wrote a number of letters of complaint but that Defendant Piper did not respond and only corrected one of the problems about which Plaintiff complained.

An inmate grievance procedure within the prison system is not constitutionally required. *See United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 163 (S.D.N.Y. 1977), *aff'd sub nom*, *Wolfish v. Levi*, 573 F.2d 118 (2d Cir. 1978), *rev'd on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. Cty. of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977). Because Plaintiff has no right to an effective grievance procedure, *Ishaaq v. Compton*, 900 F .Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers*

*v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991), to the extent that Plaintiff is alleging a claim related to the lack of grievance forms, his claim must be dismissed.

### *Official-capacity claims*

Plaintiff sues each Defendant in his official capacity. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against the employees of Allen County and the Scottsville Police Department in their official capacities are actually brought against the Allen County and Scottsville governments. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Here, Plaintiff does not allege a policy or custom of the municipalities was the moving force of the alleged constitutional violations. Instead, his allegations appear to be that the motive for Defendants' actions was personal. The official-capacity claims will be dismissed for failure to state a claim.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claim relating to filing grievances and all official-capacity claims against all other Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will allow the individual-capacity claims against Defendants to continue with regard to Plaintiff's federal equal-protection claims,[1] First Amendment claims, retaliation claims, Fourteenth Amendment claims related to cruel and unusual punishments,[2] and civil-conspiracy claims, as well as his state-law claims of negligence, lack of training, and intentional infliction of emotional distress.

In allowing those claims to proceed, the Court expresses no opinion on their ultimate merit. A separate Scheduling Order will be entered to govern the development of this case.

Date: December 29, 2015

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Defendants
Allen County Attorney
4416.009

---

[1] The Court interprets the complaint as alleging claims under a class-of-one theory of equal protection. *See Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009).

[2] For a pretrial detainee like Plaintiff, "[d]ue process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). The Cruel-and-Unusual-Punishments Clause does not apply to pretrial detainees. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (*abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). However, pretrial detainees are shielded from cruel and unusual punishment by the Due-Process Clause of the Fourteenth Amendment, which provides similar if not even greater protection than the Cruel-and-Unusual-Punishments Clause. *Id.*